UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEXTER MEACHAM and SHAUNA MEACHAM,<br><br>    Plaintiffs,<br><br>    v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., *et al.*,<br><br>    Defendants. | CASE NO. C18-1078-RAJ<br><br>ORDER |

This matter comes before the Court on Defendants Vanderbilt Mortgage and Finance, Inc's. ("VMF") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") Motion to Dismiss (Dkt. # 4), and Plaintiffs' "Emergency Motion to Continue Motion to Dismiss" ("Motion to Continue"). Dkt. # 9. Plaintiffs oppose Defendants' Motion to Dismiss, and Defendants have filed a Reply. Dkt. ## 12, 13. Defendants oppose Plaintiffs' Motion to Continue, and Plaintiffs have not filed a Reply. Dkt. # 10.

For the reasons that follow, Plaintiffs' Motion to Continue is **GRANTED**, and Defendants' Motion to Dismiss is **GRANTED**.

ORDER – 1

## I. BACKGROUND

On August 1, 2007, Plaintiffs borrowed $272,250.00 from First Franklin Corp ("First Franklin"). Dkt. # 1-1, ¶ 8, Ex. D. The loan was secured by a Deed of Trust executed by Plaintiffs in favor of First Franklin encumbering the real property commonly known as 37407 49th Ave. S, Auburn, WA 98001 (the "Property"), which Deed of Trust was recorded in the records of King County on August 7, 2007 under Auditor's File No. 20010807001756. Dkt. # 1-1, ¶ 10, Ex. B. On October 9, 2012, the Deed of Trust was assigned to VMF by an Assignment of Deed of Trust recorded on November 9, 2012 under Auditor's File No. 20121109000429 in the records of King County (the "Assignment"). Dkt. # 1-1, ¶ 22, Ex. E. The Assignment was made by MERS, acting as a nominee for First Franklin. *Id.* at ¶ 23, Ex. E. The Assignment was signed by Amber W. Krupacs, who signed as "Assistant Secretary." *Id.* The Adjustable Rate Note (the "Note") was also endorsed in blank by First Franklin. Dkt. # 1-1, ¶ 8, Ex. D, p. 4.

After Plaintiffs' default, VMF commenced a judicial action to foreclose the Deed of Trust on September 3, 2014. Dkt. # 1-1, ¶ 29, Ex. F, Ex. H at p. 3. The judicial foreclosure complaint was served on Plaintiffs on November 10, 2014 but Plaintiffs failed to respond to the complaint and an Order of Default was entered on January 12, 2015. Dkt. # 1-1, Ex. I. On February 10, 2015, the King County Superior Court entered a Judgment for Deed of Trust Foreclosure, which was amended by an Amended Judgment for Deed of Trust Foreclosure entered on March 24, 2015. Dkt. # 1-1, ¶ 30, Exs. J, K.

On April 8, 2015, the Superior Court entered an Ex Parte Motion and Order Authorizing Sale of Real Property and the Clerk issued the Writ of Execution of Real Property. Dkt. # 1-1, ¶ 31, Exs. L, M. The King County Sheriff levied the Property in April 2015 (Dkt. # 1-1, ¶ 32), and the Sheriff's foreclosure sale was held on June 12, 2015 (Dkt. # 1-1, ¶ 33.). VMF purchased the Property at the Sheriff's sale for $275,000.

ORDER – 2

*Id*. The Certificate of Sale was issued to VMF and recorded on August 26, 2015 under Auditor's File No. 20150826001579 in the King County records. Dkt. # 1-1, ¶ 33, Ex. N. The redemption period expired on February 12, 2016 and the Sheriff's Deed to Real Property was issued on February 17, 2016 and recorded on March 21, 2016 under Auditor's File No. 20160321000645. Dkt. # 1-1, ¶ 34, Ex. Q.

On February 17, 2016, Plaintiffs, proceeding pro se, filed a complaint against Defendants VMF and MERS in this Court before Judge Coughenour, Case No. 2:16-cv-00237-JCC. The complaint sought an order either awarding injunctive relief against VMF's enforcement of the foreclosure judgment or requiring the defendants to release the Deed of Trust. VMF and MERS moved the federal district court to dismiss the complaint and on August 30, 2016; after Plaintiffs failed to respond, the Court entered an Order Granting Defendants' Motion to Dismiss on the grounds the Court lacked jurisdiction over Plaintiffs' claims and because of operation of the *Rooker-Feldman* doctrine. *Meacham v. Vanderbilt Mortg. & Fin.*, No. C16-237-JCC, 2016 WL 5947421 (W.D. Wash. Aug. 30, 2016).

On November 15, 2017, Plaintiffs, now represented by counsel, filed the Complaint in this matter in the Superior Court of King County against defendants VMF, MERS, and First Franklin. Dkt. # 1-1, ¶ 3. Plaintiffs' Complaint, styled as a "First Amended Complaint," include new allegations generally alleging that (1) the Note itself suffers from a material defect in that the determination of the interest rate requires consideration of extrinsic materials; and (2) the Assignment to VMF was fraudulent and a nullity because MERS was not the beneficiary and VMF assigned the Note to itself, as Amber Krupacs worked for VMF, not MERS. Dkt. # 1-1 at ¶¶ 13-28. To support these claims, the Complaint includes for the first time a Declaration from Marie McDonnell, a Mortgage Fraud and Forensic Analyst and Certified Fraud Analyst. Dkt. # 1-1, Exs. A, V. In her Affidavit, Ms. McDonnell states that Plaintiff Dexter Meacham approached her

ORDER – 3

and asked her to investigate Plaintiffs' case to determine if there was fraudulent conduct. *Id.* at pp. 135-36, ¶ 4. This Affidavit states that after a review of the publicly available records, Ms. McDonnell concluded that both the Note and Assignment were fraudulent for the reasons identified. Dkt. # 1-1 at 150-52.

Defendants removed the case to U.S. District Court on July 23, 2018. Dkt. # 1. One day later, on July 24, 2018, Defendants filed a Motion to Dismiss and noted the motion on the calendar for August 24, 2018. Dkt. # 4. On that date, Plaintiff filed an "Emergency Motion to Continue Motion to Dismiss," requesting an extension of time to respond to Defendants' Motion to Dismiss. Dkt. # 9. Plaintiff's counsel acknowledges that she missed the response deadline, but claims that this was due to a painful back injury, and requested an extension to file a response to Defendants' Motion to Dismiss. *Id.* Defendants oppose, claiming that Plaintiffs' counsel did not articulate sufficient reasons why her neglect was excusable. Dkt. # 10.

## II. DISCUSSION

### A. Plaintiffs' Motion to Continue

Under Federal Rule of Civil Procedure 6(b), "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P 6(b)(1)(B). In determining whether neglect is excusable, the court considers: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, the Court finds that there is no prejudice to Defendants because the approximate two-week delay did not prevent them from filing a Reply to Plaintiffs' Response or prevent this Court from considering it. The court also finds that the delay

ORDER – 4

does not justify denying Plaintiffs an opportunity to respond, and that health reasons could constitute an intervening circumstance beyond Plaintiffs' attorney's control. Given the current record, the Court concludes that Plaintiffs' neglect was excusable. Accordingly, Plaintiffs' Motion to Continue is **GRANTED**. The Court will consider Plaintiffs' Response to Defendant's Motion to Dismiss.

### B. Defendant's Motion to Dismiss

Federal Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its Dkt. # 1-1e." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Defendants contend that Plaintiffs' Complaint should be dismissed with prejudice for failing to state a claim upon which relief can be granted because (1) the claims are time-barred under the applicable statutes of limitations or via laches; (2) Plaintiffs fail to state a claim under Washington law; (3) Plaintiffs are barred from collaterally attacking

ORDER – 5

the state court judgment through res judicata; and (4) Plaintiffs failed to properly serve MERS and VMF. Dkt. # 4 at 6.

### 1. Plaintiffs' Claims Are Time-Barred

Defendants argue that every claim and allegation set forth in Plaintiffs' Complaint is time-barred under the applicable statute of limitations. Dkt. # 4 at 6. The Court agrees. In Washington, the statute of limitations "begins to run when the party discovered, or with the exercise of due diligence could have discovered, the existence of a fraudulent conveyance." *Aberdeen Fed. Sav. & Loan Ass'n v. Hanson*, 58 Wn. App. 773, 776, 794 P.2d 1322 (1990). "A cause of action may accrue for purposes of the statute of limitations if a party should have discovered salient Dkt. # 1-1ts regarding a claim." *Green v. A.P.C.*, 136 Wn.2d 87, 95, 960 P.2d 912 (1998). Here, Plaintiffs' Complaint asserts violations of: (1) the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq*; (2) the Washington Deed of Trust Act ("DTA"), RCW 61.24, *et seq*; and (3) common law fraud. Dkt. # 1-1.

Here, all of the allegations in the Complaint are based on the terms of the Deed of Trust and Note and the origination of the loan, which occurred in 2007, the Assignment that was recorded in 2012, and the foreclosure proceedings leading up the Sheriff's sale in 2015. Plaintiffs argue that Defendants violated the CPA and DTA by "making an unlawful assignment, and fraudulently inducing Plaintiffs to execute a Deed of Trust and Note[.]" Dkt. # 1-1, ¶ 37. Plaintiffs also assert that Defendants defrauded them in violation of RCW 19.16.250(15), alleging that Defendants improperly sent notices of default and debt collection letters, and sued for foreclosure because those actions, in Plaintiffs' view, were actions Defendants could not take based on Plaintiffs' asserted errors relating to the financing documents and the Assignment. Dkt. # 1-1, ¶ 39.

All of Plaintiffs' claims, as currently pled, are untimely under the applicable statute of limitations. First, Plaintiffs' DTA claim for damages is subject to a limitations

ORDER – 6

period of two years after the foreclosure sale. RCW 61.24.127(2)(a). Because the foreclosure sale occurred on June 12, 2015, Plaintiffs' claims under the DTA expired on June 12, 2017, months before Plaintiffs filed their Complaint in November 2017.

Likewise, Plaintiffs' CPA claims, which derive from the 2007 and 2012 allegations underlying the DTA claim, are subject to a four-year statute of limitations period. RCW 19.86.120. To the extent Plaintiffs' CPA claims derived from their DTA claims relating to the June 2015 foreclosure sale, those claims were subject to a two-year statute of limitations, which expired in June 2017. RCW 61.24.127(2)(a). Both theories would render the CPA claims untimely.

Finally, Plaintiffs' fraud claims appear to be based primarily on the fraudulent assignment of the Note in 2012. This claim is subject to RCW 4.16.080(4), which requires an action based on fraud to be brought within three years. As with the other claims, Plaintiffs' fraud claim as to the Assignment of the Note became untimely in 2015. Moreover, to the extent Plaintiffs assert fraud in the judicial foreclosure sale in June 2015, that claim would be subject to RCW 61.24.127, which requires a common law fraud claim to be brought within two years of a foreclosure sale. Plaintiffs' November 2017 Complaint is thus untimely with respect to both potential fraud theories.

Plaintiffs do not respond directly to Defendants arguments, but instead refer generically to the "discovery rule," and argue that the McDonnell Declaration shows that the factual basis for the fraud-based claims were not discovered prior to 2018. Dkt. # 12 at 6. "The discovery rule is an exception to the general rule of accrual, and has been applied by Washington courts to claims where 'injured parties do not, or cannot know that they have been injured.'" *Shepard v. Holmes*, 185 Wn. App. 730, 740, 345 P.3d 786 (2014). Under the discovery rule, the cause of action accrues when a plaintiff, through the exercise of due diligence, "knew or should have known the basis for the cause of action." *Green v. A.P.C.*, 86 Wash. App. 63, 66, 935 P.2d 652, 655 (1997), *aff'd and*

ORDER – 7

*remanded*, 136 Wash. 2d 87, 960 P.2d 912 (1998). Plaintiffs' argument is insufficient and inapposite. While Plaintiffs may not have "discovered" the alleged fraud until 2018, they do not address the relevant inquiry: whether Plaintiffs "could have discovered" the relevant facts through the exercise of due diligence within the applicable timeframe. Here, Plaintiffs' Complaint, as well as the attached McDonnell Affidavit, largely rely on publicly accessible information such as the Note, Assignment, and foreclosure proceeding documents, which were all recorded in the King County Recorder's Office from 2007 to 2015. Dkt. # 1-1, ¶¶ 8-28. This publicly accessible information is presumed to be discoverable, and nothing in Plaintiffs' Complaint or Response dispel this presumption. *See Shepard*, 185 Wn. App. at 740 ("[A]ctual discovery will be inferred [] where the facts constituting the fraud were a matter of public record.").

As it stands, Plaintiffs' Complaint fails to state any cause of action because each of their claims are time-barred. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss on these grounds and **DISMISSES** each of Plaintiffs' claims.

### 2. Plaintiffs' Claims Fail as a Matter of Law

Even if Plaintiffs' claims were not time-bared, the Court would still find that Plaintiffs failed to state a claim under the DTA, CPA, and common law fraud. The crux of Plaintiffs' Complaint is twofold: (1) the Note is defective because resolution of the "fixed amount of money" due thereunder, requires consultation of extrinsic materials, a material defect that renders the Note non-negotiable; and (2) the Assignment of the Note in 2012 to VMF was fraudulent and defective because MERS had nothing to assign and one of VMF's employees signed on behalf of MERS and assigned the Note to VMF. Dkt. # 1-1 at ¶¶ 8-28. Both theories are either inadequately pled or not viable on their basic premise.

First, Plaintiffs' contention that VMF could not lawfully foreclose because the Assignment of the Note was a "nullity" ignores Defendants' argument that VMF properly

ORDER – 8

foreclosed because it was the holder of the Note, regardless of the Assignment. Defendants' position is better supported by Washington law. In Washington, the DTA "contemplates that the security instrument will follow the note, not the other way around." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wash.2d 83, 285 P.3d 34, 36 (Wash. 2012); *see also Bavand v. OneWest Bank*, 196 Wash. App. 813, 385 P.3d 233, 248 (2016), *as modified* (Dec. 15, 2016) ("By operation of law, [the borrower's] deed of trust followed the negotiation of that note now held by [the foreclosing party]. Accordingly, [the foreclosing party] had the ability to enforce the deed of trust due to its possession of the note."). Although Plaintiffs describe an alleged fraudulent transfer by MERS and VMF in some detail, the result of such a transfer would have no effect on VMF's ability to foreclose in the event of a default. *See Beck v. U.S. Bank, N.A.*, 2017 WL 6389330, at *4 (W.D. Wash. Dec. 14, 2017), *quoting Blake v. U.S. Bank, N.A.*, 2013 WL 6199213, *2 (W.D. Wash. Nov. 27, 2013) ("the power to initiate foreclosure lies with the holder of the promissory note 'regardless of any assignment of the deed of trust.'"); *Hurney v. HSBC Bank, USA, N.A. for Merrill Lynch Alternative Note Asset Tr., Series 2007-0AR2*, 2017 WL 2423180 (2017) (unpublished) ("MERS's assignment of its 'beneficial interest' in the deed of trust is irrelevant to the authority of OneWest to commence foreclosure...."). In the Complaint, Plaintiffs do not allege that VMF is not the holder of the Note, as "Holder" status, and thus DTA beneficiary status, turns on possession of the note, not lawful ownership through assignment. *See Beck*, 2017 WL 6389330, at *3 (citing *Brown v. Wash. State Dep't of Commerce*, 184 Wash.2d 509, 359 P.3d 771, 784 (Wash. 2015)).

The failure of this theory is fatal to the DTA claim as currently pled. Plaintiffs' Complaint, however, also alleges that the Note itself suffers from a material defect that renders it non-negotiable because it creates a condition whereby one must look beyond the Note to another instrument to determine the "fixed amount of money" due thereunder, yet no such instrument exists. Dkt. # 1-1 at ¶¶ 20-21. Defendants do not address this

ORDER – 9

issue, presumably because the Complaint itself does not allege that VMF is not the holder. However, the McDonnell Affidavit attached to the Complaint argues that such a defect meant that VMF did not own a valid Note and was therefore not a "Note Holder" that had the authority to foreclose. *See* Dkt. # 1-1 at p. 147, ¶ 47 ("Because Vanderbilt failed to correct this material defect, it was not a Note Holder or the person entitled to enforce the Note on November 10, 2014 when Vanderbilt filed its Amended Complaint."). Plaintiffs' Complaint does not appear to rely on this assumption in setting forth the DTA claim, but does allege some of the necessary factual prerequisites. Dkt. # 1-1, ¶¶ 12-21. Ultimately, as currently pled, Plaintiffs' Complaint itself fails to set forth a viable DTA claim, but given the lack of briefing on the "Note Holder" issue the Court cannot definitively say at this point that such a DTA claim would theoretically be a nullity, aside from the question of whether it is time-barred.

As to Plaintiffs' CPA claim, Plaintiffs must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) injuring plaintiffs' business or property; and (5) caused by defendants' unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 780 (1986). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002). Defendants argue that the CPA claim fails because (1) it is based on an inapplicable statute relating to collection agencies; (2) Plaintiffs fail to plead a public interest; (3) Defendants' alleged acts were not the "but for" cause of Plaintiffs' injury, as the injury was caused by Plaintiffs' default; and (4) Plaintiffs have not plead a compensable injury. Dkt. # 4 at 16-20. The Court agrees. Plaintiffs do rely on a statute that improperly seeks to categorize Defendants and debt collectors (RCW Chapter 19.16), and do not plead any public interest. Dkt. # 1-1, ¶¶ 35-41. Moreover, the Court agrees with the argument that the alleged acts were not the "but for" cause of Plaintiffs' injury. Based on the

ORDER – 10

Complaint, Plaintiffs' payments to the purportedly incorrect Note Owner was not the cause of their losses; Plaintiffs' failure to pay was the cause of the foreclosure. *See, e.g.*, *Babrauskas v. Paramount Equity Mortgage*, 2013 WL 5743903, *4 (W.D. Wash. Oct. 23, 2013) (finding no injury under the CPA because "plaintiff's failure to meet his debt obligations is the 'but for' cause of the default, the threat of foreclosure, any adverse impact on his credit, and the clouded title"); *McCrorey v. Fed. Nat. Mortg. Ass'n*, 2013 WL 681208 (W.D. Wash. Feb. 25, 2013) (finding no injury under the CPA because "it was [plaintiffs'] failure to meet their debt obligations that led to a default, the destruction of credit, and the foreclosure"). Plaintiffs do not respond to these arguments; instead, Plaintiffs' Response simply restates a number of legal standards applicable to CPA claims, but fails to apply these standards to the facts of this case. Dkt. # 12 at 8-9. Moreover, Plaintiffs' Complaint makes clear that the CPA claims are premised off of the alleged DTA violations, which, as stated above, fail to state a claim. Accordingly, Plaintiffs' Complaint likewise fails to state a CPA claim.

Finally, as to Plaintiffs' common law fraud claim, the Court again finds that Plaintiffs have failed to state a claim, and failed to plead this claim with the requisite particularity under Fed. R. Civ. P. 9(b). To properly state a claim for fraud, Plaintiff must allege: (1) a representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) Plaintiffs' ignorance of its falsity; (7) Plaintiffs' reliance on the truth of the representation; (8) Plaintiffs' right to rely upon it; and (9) damages suffered by the Plaintiffs. *Stiley v. Block*, 130 Wash. 2d 486, 505, 925 P.2d 194, 204 (1996). First, Defendants are correct that Plaintiffs improperly "lump[ed] together" all Defendants into their fraud allegations, without identifying with particularity which Defendant was responsible for each alleged fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Plaintiffs do not respond to this point. In general, Plaintiffs' only response is to

ORDER – 11

argue again that MERS was not the beneficiary, and therefore had no authority to transfer or assign the Note. Dkt. # 12 at 10-12. This refrain misses the point. "The mere inclusion of MERS in a loan transaction also does not support a fraud claim." *Dietz v. Quality Loan Serv. Corp. of Washington*, C13-5948 RJB, 2014 WL 1245269, at *4 (W.D. Wash. Mar. 25, 2014). Plaintiffs' allegations fail to set forth any cognizable theory whereby the inclusion of MERS as a purported beneficiary under the Deed of Trust injured their rights ability to satisfy their obligations under the Note. Plaintiffs fail, for instance, to allege that they made payments to the wrong entity, or were confused as to which entity to make payments to. Second, it is unclear to this Court, based on Plaintiffs' Complaint, whether Plaintiffs relied on any of the fraudulent acts identified. Even if MERS was not the beneficiary, and the Assignment was made without the adequate authorization, it is unclear how Plaintiffs relied on this misrepresentation to their detriment, as Defendants persuasively argue that the result of their default would have presumably been the same no matter who legally owned the Note. Dkt. # 4 at 21.

Accordingly, the Court finds that Plaintiffs' Complaint fails to state a claim under the DTA, CPA, or common law fraud.[1]

---

[1] As to Defendants' argument that Plaintiffs' claims in this lawsuit are barred by res judicata and the collateral attack rule, Defendants correctly observe that Plaintiffs failed to directly respond to this argument. Dkt. # 4 at 11-14; Dkt. # 13 at 2. Normally, such a lack of response could act as an admission that the argument had merit. W.D. Wash. Local Civil Rule 7(b)(2). However, in their Response, Plaintiffs did restate the allegations of allegedly newly-discovered fraudulent conduct present in their Complaint, which Defendants only respond to by arguing that the fraud claims are either not sufficiently defined or time-barred. Dkt. # 12 at 1-5. The Court agrees with Defendants that the state court foreclosure judgment would normally be afforded preclusive effect. However, the Washington Supreme Court has, in the past, recognized fraud as an exception to res judicata. *See, e.g., White v. Miley*, 137 Wash. 80, 82, 241 P. 670, 671 (1925). Because neither party provides an adequate analysis for how res judicata operates in light of Plaintiffs' allegations of fraudulent procurement of the state court judgment, and because the Court is dismissing Plaintiffs' claims on other grounds, the Court need not and will not reach this issue at this time.

ORDER – 12

**C. Leave to Amend**

The Court next considers whether to grant Plaintiffs leave to amend. The Court may grant leave to amend freely when justice so desires. Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the pleadings or technicalities." *Roth v. Garcia Marquez,* 942 F.2d 617, 628 (9th Cir. 1991); *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile.") (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Further, the policy of favoring amendments to pleadings should be applied with "extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

The Court is skeptical that Plaintiff can overcome the statute of limitations issues identified above, among other barriers. However, Plaintiffs' claims may theoretically avoid the limitations issue, for instance, if Plaintiffs allege sufficient facts the demonstrate the alleged fraudulent conduct was not reasonably discoverable within the applicable limitations period. Even if Plaintiffs avoid this issue, however, they must still state cognizable claims under the DTA, CPA, or common law fraud, which the Complaint does not currently do. Because of inadequate briefing on certain issues, however, the Court cannot say at this point that Plaintiffs cannot state a claim

The Court will thus grant Plaintiffs one opportunity to amend their Complaint, **which Plaintiff must file with fourteen (14) days of this Order**.[2] If Plaintiffs fail to

---

[2] Because the Court is granting Plaintiffs leave to file an amended pleading, it will also grant Plaintiffs an opportunity to serve this amended pleading on all Defendants. Accordingly, the Court will not address Defendants' argument as to ineffective service at this time. Dkt. # 4 at 21-

ORDER – 13

make such a filing, or if Plaintiffs' Complaint fails to state a claim by failing to cure the deficiencies identified above, the Court will dismiss Plaintiffs' claims, and this case, with prejudice.

### III. CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Continue (Dkt. # 9) and **GRANTS** Defendants' Motion to Dismiss (Dkt. # 4). Plaintiffs are instructed to file an amended pleading with fourteen (14) days of this Order.

Dated this 13th day of February, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

23. Should Plaintiffs fail to serve this amended pleading as directed, Defendants may renew their objections.

ORDER – 14